**Kathleen A. BEECHER and Keith Beecher, Plaintiffs,**

v.

**TAMBRANDS, INC., Defendant.**

Civ. No. 3–90–639.

United States District Court,
D. Minnesota,
Third Division.

Feb. 12, 1993.

**2.** Plaintiff's motion to strike defendant's affirmative defenses [doc. # 12] is denied as moot at this time.

Charles C. Brown, Jr., Cedar Rapids, IA, for plaintiffs.

Joseph P. Moodhe, Debevoise and Plimpton, New York City, for defendant.

## MEMORANDUM AND ORDER

RENNER, Senior District Judge.

At a hearing on November 19, 1992, this Court orally granted defendant Tambrands, Inc.'s motion for partial summary judgment with respect to the plaintiffs' claims of state law failure to warn in packaging and in advertising, and federal law failure to warn prior to 1982. However, the Court ordered further briefing on Tambrands' motion for partial summary judgment with respect to Kathleen and Keith Beecher's claim of failure to comply with federal package warning requirements and on Tambrands' motion for summary judgment on the grounds that the Beechers have not offered sufficient evidence to create a genuine issue of material fact as to the link between Kathleen Beecher's use of tampons and her episode of Toxic Shock Syndrome (TSS) in December of 1989. After carefully considering the parties' supplemental briefing, the Court concludes that Tambrands is entitled to summary judgment on the remaining two issues.

## I. The Package Warning Claim

The first of the two remaining claims is the Beechers' assertion that Tambrands' package warnings do not comply with 21 U.S.C. § 352(c) (1988). Section 352(c) requires that labeling prescribed by the Food, Drug, and Cosmetic Act be sufficiently conspicuous and understandable to be "likely to be read and understood by the ordinary individual under customary conditions of purchase and use."

Pursuant to the Food, Drug, and Cosmetic Act, the Food and Drug Administration (FDA) has promulgated regulations requiring manufacturers of tampons to include in tampon packaging warnings, or alert statements, notifying consumers of the link between tampon use and TSS. Courts of this District have held twice that there is no genuine issue of fact as to whether the Tampax alert statements comply with the FDA's TSS alert statement regulations, including the requirement that such alert statements be prominent. *See Lindquist v. Tambrands, Inc.*, 721 F.Supp. 1058, 1064 (D.Minn.1989); *Cornelison v. Tambrands, Inc.*, 710 F.Supp. 706 (D.Minn.1989). However, no reported case has determined whether a manufacturer's tampon package TSS alert statement complies with the general requirement of conspicuousness imposed by § 352(c).

■ A brief examination of the plaintiffs' § 352(c) arguments reveals that they are without merit. The Beechers first claim that Tambrands violated § 352(c) by placing a TSS alert statement on the bottom instead of on the front of its Tampax box. However, the FDA expressly declined to require that the alert statement appear on any particular panel of the package. *See* 47 Fed.Reg. 26,-987 (1982) ("FDA has concluded that there is no need to require that the alert statement appear in any specific location, thus providing flexibility to manufacturers"). The Beechers also complain that the bulk of the alert statement is provided in an insert, not on the exterior of the package. However, the FDA permits manufacturers to include the information "as a package insert" rather than on the exterior of the package. *See* 21 C.F.R. § 801.430(c) (1992). Because the FDA explicitly refused to require that the TSS alert statement appear on the front of the package, and because it explicitly permits manufacturers to use an insert, there is no material issue of fact as to whether Tambrands' external package alert statements violate the general requirements of 21 U.S.C. § 352(c) (1988).

■ Next, the Beechers assert that the alert statement on the insert itself violates § 352(c) in a variety of ways. First they state that "the insert starts out by stating: 'If you're using TAMPAX tampons for the

first time, please read these directions carefully.'" Because Kathleen Beecher was not a first time user, the Beechers argue, this statement would have induced her to ignore the alert statement printed on the insert. This argument is disingenuous. The statement the Beechers refer to appears on the *opposite side of the insert from the TSS alert statement* and the insert is folded so that the consumer sees the TSS alert statement first.

■ The Beechers also assert that the alert statement on the insert fails to warn the consumer that "the particular tampon she is about to use has been associated with [TSS]," and because it "fails to point out to the consumer that ... *any woman* is at risk for [TSS]." (Emphasis in original.) This argument borders on being frivolous. The alert statement in no way indicates that TSS is linked only with a particular brand of tampon, or that only particular classes of women are at risk for TSS. Hence, the clear implication of the alert statement is that *any* tampon can be associated with TSS in *any* woman. Indeed, although the FDA regulations specify in detail what information the TSS alert statement must include, they do not require manufacturers to address any specific misapprehensions about TSS and tampons that users *might* have. Thus, there is no basis for the Beecher's claim that § 352(c) requires Tambrands to include such information in its TSS alert statement.

Therefore, there is no genuine issue of fact as to whether the wording of the alert statement violates § 352(c).

## II. The Link Between Beecher's Tampon Use and Her TSS

The last remaining issue is whether the Beechers have offered sufficient competent evidence to create a genuine issue of fact as to the material issue of whether Kathleen Beecher's episode of TSS was linked to her use of tampons. At the November 19, 1992 hearing the Court discussed the factual dispute in detail. In summary, the Court found that Tambrands' and the Beechers' experts flatly disagree as to whether Kathleen Beecher's TSS was mediated by a Staph. aureus infection, the only infection that has been linked to tampon-related TSS. Both sides agree that if Kathleen Beecher's TSS was not staph mediated, she cannot claim that tampons caused her TSS.

When Tambrands brought its summary judgment motions there was no evidence in the record that any expert had opined that Kathleen Beecher's TSS was staph mediated. In response to the summary judgment motions, however, the Beechers submitted the affidavits of four experts stating to the requisite reasonable degree of medical certainty Kathleen Beecher's TSS was staph mediated and therefore possibly linked to her use of tampons. The affidavits of three of these experts, all physicians who saw Kathleen Beecher during her hospitalization for TSS, appear to contradict their earlier deposition statements that they would not or could not conclude to a reasonable degree of medical certainty that the TSS was staph mediated or tampon related.

Tambrands asserts that the affidavits of all four of the Beechers' experts should be disregarded because they are based on an inadequate foundation. Tambrands also argues that the three affidavits which contradict the deposition testimony of their authors should be disregarded as sham affidavits filed solely for the purpose of opposing a summary judgment motion.

■ In Minnesota, a jury may choose to rely on an opinion given by a medical expert in a respected, recognized field of medicine if it is given with reasonable medical certainty and is based on an adequate foundation. *Grunst v. Immanuel–St. Joseph Hosp.*, 424 N.W.2d 66, 67–68 (Minn.1988). The Court concludes that none of the affidavits of the Beechers' experts is based on an adequate foundation.

■ The authors of three of the affidavits base their conclusions entirely, and Dr. Philip M. Tierno bases his conclusion partly, on the asserted observation that Kathleen Beecher responded poorly to an anti-strep antibiotic but well to anti-staph antibiotics (hereinafter the "bad response-good response" claim). None of these affidavits, however, provides any evidence supporting the bad response-good response claim.

In contrast, an affidavit submitted by Tambrands does rely on the hospital records to refute the Beecher affidavits. Citing specific entries in Kathleen Beecher's hospital records, Dr. Clayton L. Thomas states that Kathleen Beecher was first put on a staph-specific antibiotic. Two days later, after laboratory cultures revealed no Staph. in any sample but did find Group A Strep. in her blood sample and Group B Strep. in her vaginal sample, she was switched to a strep-specific antibiotic. Ten days later, the strep-specific antibiotic was discontinued because it was suspected as the cause of a rash Kathleen Beecher was suffering. From then on, Kathleen Beecher received a broad spectrum antibiotic that is potentially effective against both Strep. and Staph.

Thomas states that the claim that Kathleen Beecher responded well to the staph antibiotic but not to the strep antibiotics is not borne out by the records. While Kathleen Beecher did improve while she was on the staph antibiotic, this improvement should, according to Thomas, be attributed to the aggressive administration of fluids and of Dopamine, as the staph antibiotic could not have had much effect during the two days it was administered. Moreover, according to Thomas, Kathleen Beecher continued to improve while she was on the strep antibiotics. The only negative development the records reveal is that Kathleen Beecher suffered increased rectal pain. However, according to Thomas, rectal pain is not a symptom of TSS or a TSS-like syndrome, nor can it be related to tampon use. Because the hospital records do not bear out the bad response-good response claim, the Court concludes that this claim cannot serve as foundation for any of the Beechers' expert affidavits.

As three of the Beechers' expert affidavits are based entirely on the bad response-good response claim, only one, Dr. Tierno's, remains standing. The other basis for Dr. Tierno's conclusion is the "Absence of [an] overwhelming focus of infection involving Strep. Group A, therefore tending to rule out a Strep. infection and ruling in a Staph infection." This conclusion appears to be inconsistent with the laboratory culture results. The report did not indicate the presence of Staph. aureus in either the blood or the vaginal sample, but did find Strep. Group A in the blood sample and Strep. Group B in the vaginal sample.

Tierno argues that "the most likely explanation" for the Strep. Group A cultured from Kathleen Beecher's blood is surface contamination. As to the Strep. Group B in the vaginal sample, Tierno argues that it "was reported by the laboratory mainly as a precaution as Group B Strep. has been linked to problems with childbirth, since when the baby comes down the birth canal it might pick up the Group B Streptococcus." Finally, Tierno argues that the report did not reveal the presence of Staph. aureus because laboratories routinely deem Staph. aureus to be normal vaginal flora and thus do not report it.

In response to this reasoning, Tambrands submitted the affidavit of Joan M. Patten, the supervisor of the laboratory that cultured Kathleen Beecher's samples. Patten rejects Tierno's hypothesis that contamination was the most likely explanation for the positive culture of Strep. Group A from the blood sample on the grounds that the contamination rate of blood cultures from her Department was less that three percent in 1990. Patten also rejects Tierno's hypothesis that the laboratory subsumed Staph. aureus under the heading of normal vaginal flora. She states that at the hospital Kathleen Beecher was in, when a physician orders a vaginal culture, "he or she is able to note the preliminary diagnosis on the request sheet. Most request sheets are accompanied by a diagnosis." Because the preliminary diagnosis of Kathleen Beecher's condition was TSS, she states that the report would have indicated the presence of any colony of Staph. aureus. Therefore, Patten concludes "to a reasonable degree of microbiological certainty that Mrs. Beecher's genital tract culture results are correctly understood to reflect the absence of any colony of Staph. aureus."

Because the Court could not rule out the bad response-good response foundation for Tierno's conclusion at the time of the November 19, 1992 hearing, it was willing then to give Tierno's hypotheses about the culture results the benefit of the doubt. Now that

Tierno's conclusion that Kathleen Beecher had a staph infection rests solely only on the absence of an "overwhelming focus" of Strep., the Court is unwilling to conclude that Tierno's affidavit is supported by an adequate foundation. First, Tierno's statement that the absence of an overwhelming focus of Strep. infection *"tends "* to rule out Strep. as the cause of Kathleen Beecher's TSS is, by itself, weak support indeed for the weight of the conclusion that the TSS was staph mediated, especially in the face of the laboratory culture results. Second, the hypotheses that Tierno must make to explain away the culture results are highly suspect in light of the affidavit of the supervisor of the laboratory. Combined, these factors, in the Court's judgment, completely undermine the remaining foundation for Tierno's conclusion.

Therefore, the Court concludes that none of the Beechers' expert affidavits is based on an adequate foundation. Without these depositions, there is no genuine issue of material fact as to whether Kathleen Beecher's TSS can be linked to her tampon use. Accordingly, Tambrands is entitled to summary judgment on this issue.

As to Tambrands' argument that three of the affidavits should be disregarded as shams, the Court agrees that the contradiction between the deposition statements and the affidavits, as well as the lack of evidentiary support for the conclusions stated in the affidavits, calls the validity of the affidavits into question. Moreover, Tambrands may be entitled under *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir.1991) to have them disregarded. However, because the Court finds that Tambrands is entitled to judgment on foundation grounds, it need not rule on the sham issue.

Based on the entire record, the arguments of counsel, and the Court's oral ruling at the November 19, 1992 hearing, the Court ORDERS that:

1. Defendant Tambrands' motion for partial summary judgment is GRANTED, and

2. Defendant Tambrands' motion for summary judgment on the grounds that the plaintiff Beechers can present no competent evidence linking Kathleen Beecher's December 1989 episode of TSS to her use of tampons is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.