T.G. NELSON, Circuit Judge:
 

 Kandis Papike appeals from the district court’s summary judgment dismissal of her diversity products liability action against Tambrands Inc. for injuries she sustained when she contracted Toxic Shock Syndrome (“TSS”) while using Tampax Original Regular tampons. The primary issue on appeal is whether Papike’s state law claim for failure to warn of the risk of TSS related to tampon use is preempted by the Medical Devices Amendments of 1976 (“MDA”), 90 Stat. 539 (codified as amended at 21 U.S.C. §§ 360, 360c-360i (Supp.1996)). We hold that the claim is preempted. We also hold that the district court properly concluded that Tam-brands’ warnings complied with federal requirements, and properly dismissed the design defect, negligence, breach of warranty, and punitive damages claims. We affirm the grant of summary judgment to Tambrands.
 

 I
 

 In this action Papike contends,
 
 inter alia,
 
 that Tampax tampons are defective because they contain viscose rayon; that Tambrands failed to adequately warn her about an established association between Tampax tampons and TSS; and failed to comply with federal requirements for TSS warnings. Papike’s action was dismissed through a series of summary judgment rulings.
 

 The district court agreed with Tambrands that “any state law causes of action for failure to warn are preempted by the comprehensive federal regulatory scheme covering tampons and TSS.” The court found Tam-brands’ warnings, “which track the language of the federal regulations almost verbatim, constitute sufficient warning as a matter of law.”
 

 The design defect claim was later dismissed because it failed both the “consumer expectation” test and the “risk benefit” test under California law. The court concluded that the affidavit of Dr. Tierno, a microbiologist who has conducted TSS-related testing of tampons, failed to raise an issue of triable fact concerning a causal connection between Tampax Original Regular tampons and TSS.
 

 The court later dismissed the complaint when it granted Tambrands’ summary judgment motion on the remaining claims of negligence, breach of express and implied warranties, and punitive damages. The court denied Papike’s motion for reconsideration, and she timely appeals. The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.
 

 
 *-845
 
 II
 

 Our review of the district court’s summary judgment order is
 
 de novo. Bagdadi v. Nazar,
 
 84 F.3d 1194, 1197 (9th Cir.1996). In reviewing the court’s order we must view the evidence in the light most favorable to Pa-pike and determine whether there are any genuine issues of material fact and whether the court correctly applied the relevant substantive law.
 
 Id.
 

 III
 

 We first consider whether the preemption provision of the Medical Devices Amendments to the federal Food, Drug & Cosmetics Act, 21 U.S.C. § 360k(a), and the tampon labeling regulations promulgated thereunder, 21 C.F.R. § 801.430, preempt state tort law claims for failure to warn.
 

 A
 

 The Food and Drug Administration (“FDA”) has broad powers under the MDA to classify and regulate medical devices.
 
 See
 
 21 U.S.C. § 360c(b)-(f); 21 U.S.C. § 371(a). Tampons are “Class II” medical devices under the MDA. 21 C.F.R. §§ 884.5460, 884.5470 (1996). Use of Class II devices involves some risk of injury, so manufacturers of these devices must comply with federal regulations known as “special controls.” 21 U.S.C. § 360c(a)(l)(B) (Supp.1996); 21 C.F.R. § 860.3(c)(2) (1996). The FDA has promulgated regulations concerning tampon labeling “[t]o protect the public and to minimize the serious adverse effects of TSS.” 21 C.F.R. § 801.430(b). For example, a tampon manufacturer must label tampons with
 

 the following consumer information prominently and legibly, in such terms as to render the information likely to be read and understood by the ordinary individual under customary conditions of purchase and use:
 

 (l)(i) Warning signs of TSS, e.g., sudden fever (usually 102 [degrees] or more) and vomiting, diarrhea, fainting or near fainting when standing up, dizziness, or a rash that looks like a sunburn;
 

 (ii) What to do if these or other signs of TSS appear, including the need to remove the tampon at once and seek medical attention immediately;
 

 (2) The risk of TSS to all women using tampons during their menstrual period, especially the reported higher risks to women under 30 years of age and teenage girls, the estimated incidence of TSS of 1 to 17 per 100,000 menstruating women and girls per year, and the risk of death from contracting TSS;
 

 (3) The advisability of using tampons with the minimum absorbency needed to control menstrual flow in order to reduce the risk of contracting TSS;
 

 (4) Avoiding the risk of getting tampon-associated TSS by not using tampons, and reducing the risk of getting TSS by alternating tampon use with sanitary napkin use during menstrual periods; and
 

 (5) The need to seek medical attention before again using tampons if TSS warning signs have occurred in the past, or if women have any questions about TSS or tampon use.
 

 21 C.F.R. § 801.430(d). If this information is included as a package insert (rather than on the tampon box), an alert statement must be “prominently and legibly” placed on the package label:
 

 ATTENTION: Tampons are associated with Toxic Shock Syndrome (TSS). TSS is a rare but serious disease that may cause death. Read and save the enclosed information.
 

 21 C.F.R. § 801.430(c).
 

 The MDA contains an express, but “highly ambiguous” provision for the preemption of state law.
 
 Medtronic, Inc. v. Lohr,
 
 — U.S. —,—, 116 S.Ct. 2240, 2260, 135 L.Ed.2d 700 (1996) (Breyer, J., concurring in part and concurring in the judgment), which provides that:
 

 [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use
 
 any
 
 requirement—
 

 (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
 

 
 *-844
 
 (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
 

 21 U.S.C. § 360k(a) (1984) (emphasis added).
 

 The FDA interprets this preemption provision in 21 C.F.R. § 808.1(d), which provides that:
 

 State or local requirements are preempted
 
 only
 
 when the Food and Drug Administration has established
 
 specific
 
 counterpart regulations or there are other
 
 specific
 
 requirements applicable to a
 
 particular
 
 device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the
 
 specific
 
 Food and Drug Administration requirements.
 

 21
 
 C.F.R.
 
 § 808.1(d) (1996) (emphasis added). Section 808.1(d)(1) provides that “State or local requirements of
 
 general applicability
 
 ” are not preempted
 

 where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.
 

 21 C.F.R. § 808.1(d)(1) (1996) (emphasis added).
 

 The Supreme Court “[has] long presumed that Congress does not cavalierly pre-empt state-law causes of action.”
 
 Medtronic,
 
 — U.S. at—, 116 S.Ct. at 2250. “The purpose of Congress is the ultimate touchstone” in a preemption case.
 
 Retail Clerks Int’l Ass’n v. Schermerhorn,
 
 375 U.S. 96, 108, 84 S.Ct. 219, 223, 11 L.Ed.2d 179 (1963).
 

 B
 

 In this ease, the FDA has promulgated a regulation mandating the specific substantive content of the TSS warnings on tampon boxes and/or tampon package inserts. 21 C.F.R. § 801.430. The regulation is not only device-specific (tampons), but also disease-specific (TSS). This fact distinguishes Papike’s case from prior relevant MDA preemption eases, including
 
 Medtronic,
 
 — U.S. at — , 116 S.Ct. at 2258 (general federal labeling and manufacturing requirements reflecting “important but entirely generic concerns about device regulation generally,” not pacemakers specifically);
 
 Committee of Dental Amalgam Mfrs. and Distribs. v. Stratton,
 
 92 F.3d 807, 812-13 (9th Cir.1996) (no specific FDA regulations relating to dental amalgam), ce
 
 rt. denied,
 
 — U.S.—, 117 S.Ct. 754, 136 L.Ed.2d 690 (1997);
 
 Kennedy v. Collagen Corp.,
 
 67 F.3d 1453, 1459 (9th Cir. 1995) (premarket approval process for Class III devices is not a
 
 ‘“specific
 
 requirement applicable to a
 
 particular
 
 device’ ”),
 
 cert. denied,
 
 — U.S. —, 116 S.Ct. 2579, 135 L.Ed.2d 1094 (1996); and
 
 Anguiano v. E.I. Du Pont De Nemours & Co.,
 
 44 F.3d 806, 809-10 (9th Cir.1995) (no specific FDA regulations regarding carbon material used in jaw implants).
 

 In
 
 Medtronic,
 
 a divided Supreme Court addressed the extent to which state common-law claims of negligence and strict liability against the manufacturer of a failed pacemaker were preempted. — U.S. at —,—, 116 S.Ct. at 2248, 2250. Significantly, the manufacturer contended that the plaintiffs claims were preempted by the FDA’s “general ‘good manufacturing practices’ regulations, which establish general requirements for most steps in every device’s manufacture, and by the FDA labeling regulations, which require devices to bear various warnings.”
 
 Id.
 
 at —, 116 S.Ct. at 2249 (citations omitted). The Supreme Court unanimously held that the plaintiffs state common-law claim for defective design of a Class III pacemaker was not preempted by the MDA. The Court split five to four in holding that the plaintiffs negligent manufacturing and inadequate labeling claims were also not preempted. The plurality decision was authored by Justice Stevens (joined in by Justices Kennedy, Souter, and Ginsburg). Justice Breyer wrote a separate opinion (concurring in part and concurring in the judgment), in which he joined in five of the seven parts of Justice Stevens’ opinion. Justice O’Connor, joined by the Chief Justice and Justices Scalia and Thomas, concurred in part and dissented in part.
 

 The Justices were unanimous in
 
 Medtronic
 
 in holding that there can be no preemption
 
 *-843
 
 under the MDA unless there is an FDA regulation that is in some manner applicable to the device.
 
 Id.
 
 at—,—, 116 S.Ct. at 2254-55, 2257 (majority opinion);
 
 id.
 
 at—, 116 S.Ct. at 2261 (Breyer. J., concurring in part);
 
 id.
 
 at—, 116 S.Ct. at 2264 (O’Connor, J., concurring in part and dissenting in part);
 
 see also id.
 
 at—n. 9, 116 S.Ct. at 2252 n. 9 (“In the MDA, no such specifics exist until the FDA provides them.”). We have previously held that “the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device.”
 
 Angui-ano,
 
 44 F.3d at 809 (internal quotation omitted);
 
 see also Committee of Dental Amalgam,
 
 92 F.3d at 812.
 

 Unlike the general federal requirements in
 
 Medtronic,
 
 the warning requirements here reflect “the sort of concerns regarding a specific device or field of device regulation which the ... regulations were designed to protect from potentially contradictoiy state requirements.”
 
 See Medtronic,
 
 — U.S. at —, 116 S.Ct. at 2258. This, then,
 
 is
 
 a case “in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers.”
 
 Id.
 

 Papike contends that the tampon labeling regulation is too general to warrant preemption because it allows tampon manufacturers “broad latitude in the wording, style, and placement of the consumer information.” We disagree. Although the regulation provides some flexibility to the manufacturer, it mandates the specific substantive content of the TSS warning. Preemption results in this case because the FDA has established specific counterpart regulations with respect to labeling tampons.
 
 See
 
 21 C.F.R. § 808.1(d).
 
 Accord, Medtronic,
 
 — U.S. at—, —, 116 S.Ct. at 2254-55, 2257 (majority opinion);
 
 id.
 
 at—, 116 S.Ct. at 2261 (Breyer, J., concurring in part);
 
 id.
 
 at—, 116 S.Ct. at 2264 (O’Connor, J., concurring in part);
 
 Anguiano,
 
 44 F.3d at 810.
 

 That the state “requirement” in this case arises out of a state common-law cause of action for failure to warn, rather than a specific state statute, does not save Papike’s claim from preemption. The plurality in
 
 Medtronic
 
 stops short of declaring that common law duties are never “requirements” under § 360k, finding it unnecessary to reach this issue.
 
 Id.
 
 at—-—, 116 S.Ct. at 2258-59. Five Justices did, however, conclude that “requirement” encompasses state common-law claims to the extent that their recognition would impose any requirements different from, or in addition to, FDA requirements applicable to the device.
 
 Id.
 
 at —, 116 S.Ct. at 2259-60 (Breyer, J., concurring in part);
 
 id.
 
 at—,—,—, 116 S.Ct. at 2262, 2263, 2264 (O’Connor, J., joined by three other Justices, concurring in part). A majority of the Court has spoken on this issue, and to the extent we concluded in
 
 Kennedy
 
 that the MDA cannot preempt
 
 any
 
 state common-law causes of action, the conclusion cannot survive in light of the concurring and dissenting opinions in
 
 Medtronic. See Marks v. United States,
 
 430 U.S. 188, 193-94, 97 S.Ct. 990, 993-94, 51 L.Ed.2d 260 (1977).
 

 We must next consider whether Papike’s warning claim is saved from preemption because it arises under “generally applicable” principles of state tort law.
 
 See
 
 21 C.F.R. § 808.1(d)(1). Papike contends that we must look not only at the specificity of the federal requirements, but also at whether or not the state law being preempted was “specifically developed ‘with respect to’ medical devices.”
 
 See Medtronic,
 
 — U.S. at—, 116 S.Ct. at 2258 (Part V of Justice Stevens’ plurality decision, joined in by Justice Breyer). She argues that preemption cannot be triggered in this case because a common law tort rule of general applicability is not a state requirement that is made “with respect to” a medical device. Papike relies on Section V of Justice Steven’s opinion in which the Court concluded that the plaintiff’s defective manufacturing and labeling claims, which are based on general duties owed to consumers,
 

 escape pre-emption, not because the source of the duty is a judge-made common-law rule, but because their generality
 
 *-842
 
 leaves them outside the category of requirements that § 360k envisioned to be “with respect to” specific devices such as pacemakers.
 

 Id.
 

 Although Justice Breyer joined in Section V, a fair reading of that Section and of Justice Breyer’s separate opinion does not support Papike’s claim that tampon manufacturers must comply both with FDA labeling requirements and state common-law labeling duties. In Section V, the Court evaluates the specificity of the general state common-law requirements, but only after concluding that the federal labeling and manufacturing requirements at issue were not specific to pacemakers.
 
 Id.; see also id.
 
 at—, 116 S.Ct. at 2261 (Breyer, J., concurring in part) (“Insofar as there are any applicable FDA requirements here, those requirements, even if numerous, are not ‘specific’ in any relevant sense.”). Although
 
 Medtronic
 
 was described by Justice O’Connor as “bewildering and seemingly without guiding principle,”
 
 id.
 
 at —, 116 S.Ct. at 2262, it is clear enough that the Court found no preemption of the common-law claims largely because the pacemaker was not subject to any device-specific FDA-regulations. In addition, Section V acknowledges that the statutory and regulatory preemption language does not necessarily preclude “ ‘general’ state requirements from ever being pre-empted.”
 
 Id.
 
 at —, 116 S.Ct. at 2257;
 
 see also id.
 
 at —, 116 S.Ct. at 2263 (O’Connor, J.) (pointing out confusion created in Sections IV, V, and VI of the plurality opinion).
 

 As counsel for Tambrands pointed out at oral argument, it makes little sense to argue that Justice Breyer would write separately to make clear his position that duties arising under state common law can constitute state law “requirements” which can be preempted by the MDA, and then agree that because tort law consists of generally applicable principles, it is always preempted, even in the face of specific federal requirements. Instead, in
 
 Medtronic
 
 Justice Breyer found “no actual conflict between any federal requirement and any of the liability-ereating-premis-es of the plaintiffs’ state law tort suit.”
 
 Id.
 
 at —, 116 S.Ct. at 2261. Here, there would be such a conflict. Part of Papike’s claim is that the federal requirements do not suffice, and that Tambrands should be required to, among other things, add a variety of warning statements not required by the federal regulation. As Justice Breyer explained, these are “the legal requirements that grow out of the application, in particular circumstances, of a State’s tort law.”
 
 Id.
 
 at —, 116 S.Ct. at 2259. Papike alleges generally applicable state law principles are involved, but there is a specific FDA regulation to which these generally applicable principles would be imposing additional or different requirements.
 
 See also
 
 21 C.F.R. § 808.1(d)(6)(ii) (“Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, then the prohibition will be preempted if the requirement is different from, or in addition to, a Federal requirement established under the act.”).
 

 In summary, preemption is triggered by and “the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device.”
 
 Anguiano,
 
 44 F.3d at 809 (internal quotation omitted). The tampon labeling regulation is device- and disease-specific and preemption is warranted in this case. This result is entirely consistent with
 
 Medtronic,
 
 which did not involve device-specific federal requirements.
 
 Kennedy
 
 does not support Papike’s position because not only did it involve general federal requirements, but also because its conclusion that a common-law claim cannot be preempted does not survive the five Justices’ contrary conclusion in
 
 Medtronic.
 
 We need not address Papike’s alternative arguments.
 

 IV
 

 We next consider Papike’s claim that the district court erred when it concluded that Tambrands’ warnings were sufficient under federal law. She contends that , a jury could find that the warnings here violated 21 U.S.C. § 352(c) (general misbranding statute addressing prominence of label information), 21 C.F.R. § 801.15(a) (general regulation addressing prominence of label statements on
 
 *-841
 
 medical devices), and the specific tampon labeling regulation, 21 C.F.R. § 801.430.
 

 We find no error. First, Tambrands’ warnings comply with the tampon labeling regulation. The alert statement on the package complies with § 801.430(c), including the prominence requirement.
 
 See Lindquist v. Tambrands, Inc.,
 
 721 F.Supp. 1058, 1064-65 (D.Minn.1989) (“As mandated by 21 C.F.R. § 801.430(c), the tampon package includes an alert statement worded precisely as required by the regulation and in a typeface separate and readily distinguishable from other text appearing on the panel.”). The package insert tracks the language of § 801.430(d) almost verbatim, and certainly conveys to the consumer everything the regulations require the manufacturer to explain.
 

 Second, arguing that the more general statute and regulation on “prominence” of medical device warnings could require something else or something additional does not create a material issue of fact sufficient to preclude summary judgment in the face of compliance with the specific tampon labeling requirements.
 
 See, e.g., Beecher v. Tambrands, Inc.,
 
 840 F.Supp. 86, 87-88 (D.Minn. 1993). Tambrands’ warnings were sufficient under federal law.
 

 V
 

 We next consider Papike’s argument that the district court erred in dismissing her design defect claim. She contends that the Tampax Original Regular tampon was defectively designed because it contains a layer of viscose rayon, which she alleges amplifies toxin production. Under California law, a product is defectively designed if it fails to meet an ordinary consumer’s expectations, or if injury is attributable to a specific design feature of the product and the risks associated with the design outweigh its benefits.
 
 Barker v. Lull Eng’g Co.,
 
 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 455-56 (1978). The district court concluded that Papike failed to meet either the “consumer expectation” test or the “risk-benefit” test. We find no error.
 

 Tambrands’ warnings met the federal requirements and Papike’s design defect claim therefore fails the “consumer expectation” test. To rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate.
 

 The district court properly concluded that Tambrands established the benefits of their tampon’s design outweighed the risks inherent in the design. We disagree with Papike’s contention that in evaluating the “risk-benefit” test, the district court improperly weighed the evidence when it rejected the affidavit of Dr. Tierno, a microbiologist who has conducted tampon/TSS testing.
 

 The district court properly determined that the Tiemo affidavit was insufficient to preclude summary judgment because his test results do not establish a causal connection between the composition of Tampax Original Regular tampons and TSS. As the court observed, Dr. Tierno’s research in part supported Tambrands’ position, because his 1985 tests detected no toxin with the Tampax Original Regular tampon (the same result he obtained with his 100 percent cotton control). Dr. Tiemo’s affidavit was simply insufficient to meet Papike’s burden of establishing a design defect. The district court’s rejection of the affidavit was not an invasion of the province of the jury, but rather part of the district court’s duty to evaluate Papike’s showing of the existence of some significant probative evidence.
 
 See Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986);
 
 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass’n,
 
 809 F.2d 626, 630 (9th Cir.1987);
 
 see also Celotex Corp. v. Catrett, 477
 
 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).
 

 VI
 

 Lastly, we consider Papike’s claim that the district court erred in dismissing her remaining claims of negligence, breach of express and implied warranties, and for punitive damages. Papike alleged negligence based on inadequate warning and defective design. She does not allege negligent manufacture. The district court properly dismissed the failure to warn claims based on
 
 *-840
 
 state and federal law. The court also properly ruled that Papike faded to meet the “consumer expectations” test for her design defect claim. The court explained that because the “consumer expectations” strict liability test is synonymous with the “reasonableness” test in negligence claims, Papike’s negligent design claim must also fail.
 
 See Barker,
 
 143 Cal.Rptr. 225, 573 P.2d at 455-56 (describing the consumer expectations test). Tambrands puts it another way- — that having failed to establish a design defect under
 
 Barker,
 
 Papike cannot meet the more “onerous evidentiary burdens” of proving
 
 both
 
 a design defect
 
 and
 
 that Tambrands acted unreasonably.
 
 See Anderson v. Owens-Corning Fiberglas Corp.,
 
 53 Cal.3d 987, 281 Cal. Rptr. 528, 810 P.2d 549, 552 (1991). “Summary judgment may be affirmed on any ground supported by the record.”
 
 Keenan v. Allan,
 
 91 F.3d 1275, 1278 (9th Cir.1996). We agree with the conclusion that Papike’s negligence claims are foreclosed.
 

 The court also properly found that the legally-adequate warnings, which give notice to consumers of the possibility of contracting TSS, foreclosed Papike’s claims for breach of warranty.
 
 See Temple v. Velcro USA Inc.,
 
 148 Cal.App.3d 1090, 196 Cal. Rptr. 531, 532 (1983) (adequate warning foreclosed breach of warranty action). The claim for punitive damages obviously fails as well.
 

 VII
 

 The judgment of the district court is affirmed.
 

 AFFIRMED.