**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH BIRDSONG, Individually and
on Behalf of Others Similarly
Situated; BRUCE WAGGONER,
Individually and on Behalf of
Others Similarly Situated,
            *Plaintiffs-Appellants,*

                v.

APPLE, INC.,
            *Defendant-Appellee.*

No. 08-16641

D.C. No.
5:06-CV-02280-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
October 8, 2009—San Francisco, California

Filed December 30, 2009

Before: J. Clifford Wallace, David R. Thompson and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thompson

16867

**COUNSEL**

Jeff D. Friedman, Berkeley, California, for the plaintiffs-appellants.

David Bernick, New York, New York, for the defendant-appellee.

## OPINION

THOMPSON, Senior Circuit Judge:

Plaintiffs-appellants Joseph Birdsong and Bruce Waggoner (collectively, the "plaintiffs") filed a class action complaint claiming that defendant-appellee Apple, Inc.'s ("Apple") iPod is defective because it poses an unreasonable risk of noise-induced hearing loss to its users. The plaintiffs appeal the district court's dismissal of their third amended complaint. The district court determined that the plaintiffs failed to state claims for breach of the implied warranty of merchantability and fitness for a particular purpose, and that they lacked standing to assert a claim under California's Unfair Competition Law ("UCL").

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### I

### *Background*

Apple's iPod is an electronic device which stores and plays digital audio files. Each iPod comes with a set of detachable "earbud" headphones. The iPod can be used without its earbud headphones to play music through different headphones. According to the third amended complaint, iPods have the capability of producing sounds as loud as 115 decibels. Apple includes a warning with each iPod:

*Avoid Hearing Damage*

Warning:   Permanent hearing loss may occur if earphones or headphones are used at high volume. You can adapt over time to a higher volume of sound, which may sound normal but can be damaging to

your hearing. Set your iPod's volume to a safe level before that happens. If you experience ringing in your ears, reduce the volume or discontinue use of your iPod.

Apple also provided warnings on its website.

Birdsong bought an Apple iPod in May 2005 and another in October 2005. Waggoner bought an Apple iPod in January 2005 and, six months later, a set of noise-cancelling headphones to be used with his iPod.

Birdsong, a Louisiana resident, filed this action in the Western District of Louisiana, seeking to represent a statewide class of iPod consumers. The case was transferred to the Northern District of California on the parties' joint motion pursuant to 28 U.S.C. § 1404(a). Birdsong then filed a first amended complaint asserting claims under California law. Apple moved to dismiss the first amended complaint and Birdsong responded by filing a second amended complaint. Apple then moved to partially dismiss the second amended complaint. The district court granted Apple's motion, and granted Birdsong leave to amend.

Waggoner, a California resident, then joined Birdsong in filing a third amended complaint against Apple, alleging claims for (1) breach of express warranty, Cal. Com. Code § 2313; (2) breach of the implied warranty of merchantability, Cal. Com. Code § 2314; (3) breach of the implied warranty of fitness for a particular purpose, Cal. Com. Code § 2315; (4) violation of the California UCL, Cal. Bus. and Prof. Code §§ 17220 et seq.; (5) violations of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq.; and (6) violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. Birdsong and Waggoner purported to represent a nationwide class of iPod purchasers. The dis-

trict court dismissed the third amended complaint, and Birdsong and Waggoner appeal.[1]

## II

### *Implied Warranty of Merchantability*

**[1]** The California Commercial Code implies a warranty of merchantability that goods "[a]re fit for ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c).[2] The implied warranty "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995) (quotation omitted). A breach of the warranty of merchantability occurs if the prod-

---

[1]The parties do not dispute that the district court had subject matter jurisdiction over the class action. We agree. The district court had original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs' class action satisfied CAFA's amount in controversy, numerosity and minimal diversity requirements. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Additionally, section 1332(d)'s enumerated exceptions to federal jurisdiction do not apply. *See* 28 U.S.C. §§ 1332(d)(4)(A)-(B).

[2]The substantive elements are the same under the Song-Beverly Act and Magnuson-Moss Act. Cal. Civ. Code §§ 1791, *et seq.*; 15 U.S.C. § 2301, *et seq.* Under both, the court applies state warranty law. 15 U.S.C. §§ 2301(7), 2310(d)(1); *see Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 58 (2008); *see Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 918 (9th Cir. 2005). State law requires that the goods (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label. Cal. Civ. Code § 1791.1. Both parties agree that the plaintiffs' claims under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq. and the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. require the plaintiffs to plead successfully a breach of state warranty law. Thus, because we conclude that the plaintiffs have failed to state a claim for breach of an express or implied warranty, their claims under these two statutes are also properly dismissed.

uct lacks "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003) (citing Cal. Com. Code § 2314(2)).

The plaintiffs argue the district court erred in determining that the third amended complaint failed to sufficiently plead an implied warranty claim. They alleged that the iPod (1) comes with "stock ear buds . . . designed to be placed deep into the ear canal rather than over the ears, which increases the danger of hearing damage," (2) lacks "noise isolating or cancelling properties," and (3) lacks any volume meter that will inform users they are listening at dangerous levels.

The plaintiffs contend the district court failed to take their factual allegations as true, and instead made its own counter-findings that any dangers of hearing loss were "obvious" and "avoidable." The district court also determined the danger of hearing loss did not exist unless the consumer decided to use the iPod "in an extreme way."

**[2]** The district court did not err. The plaintiffs admit that the iPod has an "ordinary purpose of listening to music," and nothing they allege suggests iPods are unsafe for that use or defective. The plaintiffs recognize that iPods play music, have an adjustable volume, and transmit sound through earbuds. The third amended complaint includes statements that (1) the iPod is *capable* of playing 115 decibels of sound; (2) consumers *may* listen at unsafe levels; and (3) iPod batteries can last 12 to 14 hours and are rechargeable, giving users the *opportunity* to listen for long periods of time. Taken as true, such statements suggest only that users have the option of using an iPod in a risky manner, not that the product lacks any minimum level of quality. *See Am. Suzuki,* 37 Cal. App. 4th at 1296.

The plaintiffs rely upon *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (Cal. Ct. App. 2001), but that case is distinguishable. In *Hicks,* homeowners brought a puta-

tive class action alleging a defect in the foundations of their homes. The defect arose from the use of a material called Fibermesh, which, according to the homeowners, caused their foundations to "crack badly" and resulted in "insect and vermin infestation, bumps in the floor and premature wearing of carpeting." *Id.* at 923. Although some of the foundations had not yet cracked, the court cited expert testimony suggesting that the cracks were "most likely" to develop, and stated, "We see no reason why a homeowner should have to wait for the inevitable injuries to occur before recovering damages to repair the defect and prevent injuries from occurring." *Id.* at 923.

The *Hicks* plaintiffs identified the defect in the foundations, which was the use of Fibermesh, and the injury inevitably caused by that defect, a cracked foundation. *Id. Hicks* distinguished cases in which "there was no history of the products failing." *Id.*

[3] In the present case, the plaintiffs make no allegations of any history of malfunction, but merely suggest possible changes to the iPod which they believe would make the product safer: (1) earbuds with noise-reduction features; (2) volume control software; (3) more and different warnings printed onto the actual iPod; and (4) a digital meter to display the output volume in decibels. The plaintiffs fail to allege, however, how the absence of their suggested changes caused any user an injury. The plaintiffs do not allege the iPods failed to do anything they were designed to do nor do they allege that they, or any others, have suffered or are substantially certain to suffer inevitable hearing loss or other injury from iPod use. *Cf. Hicks*, 89 Cal. App. 4th at 923. Accordingly, the district court correctly determined that the plaintiffs failed to allege sufficiently the breach of an implied warranty of merchantability. *See id.*; *Am. Suzuki*, 37 Cal. App. 4th at 1298.

## III

### *Express Warranty and Implied Warranty of Fitness for a Particular Purpose*

The plaintiffs' third amended complaint alleged claims for breach of an express warranty and breach of the implied warranty of fitness for a particular purpose. However, the plaintiffs have apparently abandoned those claims on appeal, as their opening brief contains no discussion of them. "We review only issues which are argued specifically and distinctly in a party's opening brief . . . We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir. 1994). Thus, we affirm the district court's dismissal of those claims.

## IV

### *California's Unfair Competition Law*

**[4]** California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice. Cal. Bus. & Prof. Code §§ 17200-17210. Each prong of the UCL is a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

**[5]** To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition. Cal. Bus. & Prof. Code § 17204; *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009). "In approving Proposition 64, the California voters declared their intent 'to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact *under the standing requirements of the United States Constitution.*' " *Buckland v.*

*Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (Cal. Ct. App. 2007) (quoting Prop. 64, § 1, (e)) (emphasis in original). Thus, to plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct. *Buckland*, 155 Cal. App. 4th at 814 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)) (internal quotation marks omitted). The requisite injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Buckland*, 155 Cal. App. 4th at 814 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted).

The plaintiffs contend the district court erred in dismissing their UCL claims for lack of standing.[3] The plaintiffs maintain they alleged that they suffered an injury in fact and argue the district court incorrectly required a showing of reliance to satisfy the UCL's requirement that they must have lost money or property as a result of Apple's conduct. Cal. Bus. & Prof. Code § 17204. Because we conclude that the plaintiffs have not alleged the requisite injury in fact to have standing, and affirm the district court's decision on that basis, we need not decide whether the district court erred in requiring an allegation of reliance, or resolve, more broadly, what standard of causation applies under the UCL.[4]

---

[3]The plaintiffs assert claims under the UCL's "unlawful" and "unfair" prongs. As a threshold matter, the plaintiffs cannot state a UCL claim under the "unlawful" prong because such a claim is predicated solely on implied warranty violations of the law, which they failed to allege. *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that the alleged conduct "must violate a law . . . in order for Plaintiffs to state a claim for relief under Section 17200's 'unlawful' prong").

[4]In addition to meeting the UCL's standing requirements, the plaintiffs must also satisfy the federal standing requirements under Article III. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court "must meet the stric-

### 1. The Plaintiffs Have Not Alleged An Injury To Themselves

The plaintiffs do not claim that they suffered or imminently will suffer hearing loss from their iPod use. The plaintiffs do not even claim that they used their iPods in a way that exposed them to the alleged risk of hearing loss. At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might *choose* to use their iPods in an unsafe manner. The risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*. *See Lujan*, 504 U.S. at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury *to himself*, even if it is an injury shared by a large class of other possible litigants.") (emphasis added). The plaintiffs do not dispute this deficiency or claim that they can amend their pleading to include allegations that they were exposed to the risk of hearing loss based on their iPod use.

The plaintiffs have not shown the requisite injury to themselves and therefore lack standing. *See id.*; Cal. Bus. & Prof. Code §§ 17203-17204 (authorizing representative UCL claims on behalf of others *only if* the claimant meets the standing requirements, including injury in fact); *Buckland*, 155 Cal. App. 4th at 812 (noting that California Proposition 64 requires plaintiffs pursuing representative claims to meet the new standing requirements).

___

ter federal standing requirements of Article III"); *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001). Because we conclude the plaintiffs lack standing under the UCL, we need not reach the question whether they have standing under Article III. We note that insofar as the UCL incorporates Article III's injury in fact requirement, *see Buckland*, 155 Cal. App. 4th at 814, the plaintiffs would lack an Article III injury in fact for the same reasons discussed below.

## 2. *The Alleged Injury Is Hypothetical*

**[6]** Although the plaintiffs allege that Apple has sold more than 100 million iPods, they do not claim that they, or anyone else, have suffered or are substantially certain to suffer hearing loss from using an iPod. As discussed above, as a result of this omission, the plaintiffs fail to state an implied warranty claim, and they have no standing to assert a UCL claim. The plaintiffs simply do not plead facts showing that hearing loss from iPod use is actual or imminent, as required. *Buckland*, 155 Cal. App. 4th at 814. To the contrary, the plaintiffs' third amended complaint reveals the conjectural and hypothetical nature of the alleged injury as the plaintiffs merely assert that some iPods have the "capability" of producing unsafe levels of sound and that consumers "may" listen to their iPods at unsafe levels combined with an "ability" to listen for long periods of time.

## 3. *The Alleged Economic Harm Does Not Constitute An Injury In Fact*

The plaintiffs claim that the iPod's inherent risk of hearing loss has reduced the value of their iPods and deprived them of the full benefit of their bargain because they cannot "safely" listen to music. The plaintiffs do not contend in this appeal that such alleged economic harm satisfies the injury in fact requirement. Instead, the plaintiffs contend this alleged loss satisfies the second part of the UCL's standing test—that they lost money or property as a result of Apple's unfair acts. Cal. Bus. & Prof. Code § 17204.

**[7]** The plaintiffs' alleged economic harm centers on their claim that the iPod has a defect (an inherent risk of hearing loss), which caused their iPods to be worth less than what they paid for them. But the plaintiffs have failed to allege a cognizable defect under any of their asserted claims. Further, the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a

hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner.

**[8]** The plaintiffs' benefit of the bargain theory fares no better. They have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time. In fact, the plaintiffs admit that Apple provided a warning against listening to music at loud volumes. The plaintiffs' alleged injury in fact is premised on the loss of a "safety" benefit that was not part of the bargain to begin with. *See Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (Cal. Ct. App. 2008) (rejecting plaintiffs' benefit of the bargain theory because the plaintiffs "d[id] not allege any false or misleading representations that could be said to have become part of the purchase and sale agreement"). *Cf. Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (holding that the plaintiff established an injury in fact where he did not receive the full number of *agreed-upon* minutes he purchased in a wireless agreement); *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1156 (C.D. Cal. 2006).

V

*Conclusion*

**[9]** The district court did not err in dismissing the plaintiffs' third amended complaint. The plaintiffs failed to plead sufficiently a claim for breach of implied warranty of merchantability and they lacked standing to assert a claim under the UCL.

**AFFIRMED.**