Filed 2/4/15  Boren v. Correct Craft CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JAYNIE BOREN, | |
| Plaintiff and Respondent, | C071080 |
| v. | (Super. Ct. No. 07AS01600) |
| CORRECT CRAFT, INC., et al., | |
| Defendants and Appellants. | |

Plaintiff Jaynie Boren and others bought ski boats manufactured by defendant Correct Craft, Inc. and distributed by defendant West Coast Correct Craft, Inc. (collectively, Correct Craft).  The boats were equipped with marine shower systems dispensing hot and cold water.  Boren brought a class action alleging, among other things, that the shower system was defective and selling it violated California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[1]  The trial court certified the class and, after a court trial, ruled that the shower system had a design defect and

---

[1] Undesignated statutory references are to the Business and Professions Code.

selling it violated the UCL. The trial court found that hot water was created by the boat's running engine, but users could be exposed to toxic amounts of carbon monoxide if they showered on the rear swim platform with the engine running. The trial court granted injunctive relief and awarded restitution damages of $300 (the cost to add the shower system) to each member of the class.

Correct Craft now contends (1) Boren lacks standing because she did not establish an actual injury, (2) Correct Craft did not violate the UCL, and (3) the trial court abused its discretion in certifying the class.

We conclude (1) Boren has standing based on her alleged economic injury, (2) substantial evidence supports the trial court's ruling that Correct Craft engaged in an unlawful business practice, and (3) the trial court did not abuse its discretion in certifying the class. We will affirm the judgment.

BACKGROUND

Carbon monoxide is hard to detect because it is colorless, odorless and tasteless, but it is present in sufficient amounts near a boat's exhaust pipe to cause unconsciousness and even death. Correct Craft ski boats featured inboard engines with exhaust ports at the back of the boat directly beneath a "swim platform" or "boarding platform." Correct Craft's owner's manual warns, "Carbon monoxide is poisonous. Excessive exposure may cause injury or death." Emissions directly from the tailpipe of a production ski boat can be as high as 14,000 parts per million (ppm). Emissions near a swim platform with an engine idling can be measured in the range of 5,000 to 10,000 ppm. An exposure of 1,200 ppm can render a person unconscious in two to five minutes. Manufacturing guidelines established by the American Boat and Yacht Council recommend that occupants of boats not be exposed to carbon monoxide emissions exceeding 125 ppm over a five-minute period.

Boren initiated class action litigation alleging that she and others bought Correct Craft boats equipped with a hot- and cold-water shower system known by Correct Craft

2

to be dangerous when used as designed. She alleged that the showers required users to stand on the swim platform and, in order to access continuous warm water, to do so while the boat's engine was idling. She also alleged that Correct Craft knew about the dangers of carbon monoxide poisoning and that the arrangement of the showers above the boat's exhaust "created a veritable deathtrap."

With Boren as class representative, the trial court certified the class on June 29, 2009, as "[a]ll present owners of Correct Craft, Inc. ski boats with marine hot and cold water shower systems installed, which were sold by Correct Craft or a Correct Craft authorized dealer in California." The certification order related that 378 such boats were sold between 1993 and 2005.

After a bench trial, the trial court issued a statement of decision finding a violation of the UCL. Comparing the design to an "attractive nuisance," the trial court found that the shower system generated hot water by exposing cold lake water to the running engine. Once the engine was turned off, warm water would be available for only three minutes. But if the user showered on the boat's swim platform while the engine was running, odorless carbon monoxide fumes from the engine's exhaust could poison the user.

The trial court ordered Correct Craft to provide notice to class members about the carbon monoxide risks and about simple steps (such as shortening the shower hose) that could be implemented to reduce the risks. The trial court also awarded restitution of $300 to each class member, the amount each member paid for the shower system.

DISCUSSION

I

Correct Craft contends Boren lacks standing because she did not establish an actual injury.

Standing to enforce the UCL is conferred on "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.)

3

"If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 325 (*Kwikset*).) Paying more than a buyer would have paid because of an unfair business practice causes an economic injury at the moment of purchase. (*Id*. at p. 334.) Plaintiffs who receive the "benefit of their bargain" despite a seller's unfair practices do not have standing, but benefit of the bargain does not mean simply that something of value was conveyed; for instance, a plaintiff who buys a food item because it is represented to be kosher or organic does not get the benefit of his bargain when the item, although edible, is not kosher or organic. (*Id*. at p. 332.) The standing analysis is wholly distinct from any restitution determination. (*Id*. at p. 337.)

The trial court found that Boren had standing because she would not have purchased the shower for $300 if she had known about the risk of carbon monoxide poisoning, and the shower's design defect was the legal cause of Boren's economic injury. The trial court found the same would necessarily be true for other class members who purchased the shower system. Correct Craft contends these findings were inadequate and that Boren had no injury in fact because Boren did not suffer carbon monoxide poisoning and did not claim to have used the shower system while standing on the swim platform with the engine running.

Correct Craft cites *Birdsong v. Apple, Inc*. (9th Cir. 2009) 590 F.3d 955, 961 (*Birdsong*), a decision preceding *Kwikset*. In that case, the Ninth Circuit held that a plaintiff did not have standing under the UCL to pursue a claim against Apple for manufacturing iPods in a way that could cause hearing loss, because there was no actual and imminent harm; plaintiffs did not show that they or any of the other 100 million iPod users had actually suffered or were substantially certain to suffer hearing loss from the device. (*Birdsong, supra,* 590 F.3d 955 at p. 961.) Correct Craft also cites *Birdsong* in comparing the warning provided by Apple regarding high audio volume with the warning

4

Correct Craft posted on its boats regarding the danger of carbon monoxide poisoning.  In *Birdsong*, Apple's warning defeated standing because the iPod warning told users how to avoid the very risk alleged as injury.  (*Ibid*.)  Correct Craft argues Boren's injury was as conjectural as that of an iPod user who might have ignored Apple's warning and suffered hearing loss.

The *Birdsong* opinion cited the standing analysis in *Buckland v. Threshold Enterprises, Ltd*. (2007) 155 Cal.App.4th 798, 814.  (*Birdsong, supra,* 590 F.3d 955 at p. 961.)  *Buckland*, however, was explicitly disapproved by the California Supreme Court in *Kwikset*, along with other cases that conflated the requirements for standing under section 17204 with the requirements for restitution under section 17203.  (*Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at p. 335.)

Here, Boren had standing based on her alleged economic injury.  The trial court found that a significant benefit of the shower was that it had a hose long enough to permit a boater to wash off on the swim platform before entering the passenger compartment.  That would allow water to drain into the lake rather than into the boat.  But the shower had a limited ability to provide warm water with the engine shut down, tempting boaters to shower with the engine running despite the warning to the contrary.  The trial court noted that "carbon monoxide poisoning in the open air is not something that is intuitive to the average person."  The benefit for which Boren bargained was a shower system that would safely direct warm water to the swim platform, but that is not what Boren received.  The trial court found that Boren would not have purchased the $300 shower system if she had known the danger it presented.  Under *Kwikset*, Boren has standing.

Correct Craft also cites another federal decision, *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales Practices and Products Liability Litigation* (C.D.Cal. 2013) 288 F.R.D. 445.  Not only was the decision based on federal rules of procedure governing class certification, its brief "benefit of the bargain" discussion was inapposite because many of the putative class members had been made whole as part of a national recall

campaign to repair vehicles at no charge before they failed. (*Id.* at p. 449.) Correct Craft also cites an unpublished federal decision involving washing machines with defective control panels. (*Tietsworth v. Sears Roebuck and Co*. (N.D.Cal., July 29, 2011, No. 5:09-CV-00288 JF (HRL)) 2011 U.S. Dist. Lexis 83316, p. *1.) The standing analysis in *Tietsworth* was aptly distinguished in a case involving windshields that could become dislodged in roll-over accidents because unreasonable safety risks are significantly more material to consumers than having a home appliance fail to operate as effectively as it should. (*Ehrlich v. BMW of North America, LLC* (C.D.Cal. 2010) 801 F.Supp.2d 908.) The federal authorities cited by Correct Craft do not persuade us that the trial court's reliance on *Kwikset* was erroneous.

II

Correct Craft next contends it did not violate the UCL.

California's UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) The trial court ruled Correct Craft violated the UCL because distributing defectively designed showers was both an unlawful business practice and an unfair business practice under the UCL. When a trial court sets out the legal and factual bases for its decision in a formal statement of decision, we review the decision for substantial evidence, resolving conflicts and drawing reasonable inferences in support of the decision. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

A

We begin by discussing the trial court's ruling that Correct Craft engaged in an unlawful business practice. The trial court acknowledged that published decisions are not uniform about how tort claims fit under the UCL, but it concluded that "a product liability claim can constitute unlawful conduct within the meaning of [section] 17200." Correct Craft claims the trial court is wrong. It argues that selling a defectively designed product does not give rise to a UCL violation unless there is evidence of intentional conduct.

6

An unlawful practice is one "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838-839.) Section 17200 borrows violations of other laws and makes them independently actionable as unlawful practices. (*Saunders v. Superior Court, supra,* 27 Cal.App.4th at p. 839, citing *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.) The borrowed law in this case pertains to defectively designed products.

Correct Craft cites *Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, for the proposition that the unintentional selling of a defective product is not an unlawful business practice. In *Klein*, a pet food manufacturer recalled dog food after it unwittingly made and distributed the product using grains contaminated with a hard-to-detect toxin. (*Klein v. Earth Elements, Inc., supra*, 59 Cal.App.4th at pp. 967- 968.) Klein asserted that distributing the tainted dog food was an unlawful business practice based on strict product liability and breach of the implied warranty of fitness. (*Id*. at p. 969.) The Court of Appeal disagreed: "In our view the unintentional distribution of a defective product is beyond the scope and policy of the 'unlawful' prong of section 17200." (*Id*. at p. 969.) The Court of Appeal emphasized that the contamination was accidental and the manufacturer's quick response was exemplary. (*Id*. at p. 970.)[2]

*Klein* is factually distinguishable. Here there is no evidence that the shower design was an accident or that Correct Craft's response to the danger was "exemplary." Correct Craft provided a warning label, but the trial court noted Correct Craft "may not

---

[2] Correct Craft also cites two other federal decisions based on a strict reading of *Klein*. (See *Hartless v. Clorox Co.* (S.D.Cal., Nov. 2, 2007. No. 06CV2705 JAH(CAB)) 2007 U.S. Dist. Lexis 81686 (*Hartless*) [applying *Klein* to allegations that a toilet cleaner harmed rubber flappers in toilet tanks, and holding that product liability claims did not support the "unlawful" prong of the UCL]; *Stearns v. Select Comfort Retail Corp*. (N.D.Cal. 2010) 763 F.Supp.2d 1128 [relying on *Hartless* to conclude that product liability is not adequate for the "unlawful" prong in a mattress mold case].)

7

have moved with alacrity" in that regard.  Thus, although there was no finding that Correct Craft engaged in intentional misconduct, Correct Craft's practices were not accidental like the spoiled grain in *Klein*; Correct Craft's response to the shower danger did not involve a recall effort like the one in *Klein*; and Correct Craft's conduct was not the kind of "unintentional distribution of a defective product" that the *Klein* court held was not an unlawful business practice.  (*Klein v. Earth Elements, Inc., supra*, 59 Cal.App.4th at p. 969.)

The trial court found compelling the analysis in three recent federal cases holding common law torts to be adequate predicates for an unlawful business practice:  *CRST Van Expedited, Inc. v. Werner Enters*. (9th Cir. 2007) 479 F.3d 1099 [intentional interference with contract]; *Clark v. Prudential Ins. Co. of America* (D.N.J. 2010) 736 F.Supp.2d 902 [implied covenant of good faith]; and *Cortez v. Global Ground Support, LLC* (N.D.Cal., Nov. 25, 2009, No. 09-4138 SC) 2009 U.S. Dist. Lexis 110268, pp. *6-11 [negligent product design].  And the California Supreme Court recently reiterated that the UCL exists to provide streamlined procedures and limited remedies that are purposefully cumulative to remedies provided by other laws.  (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 398-399.)  The UCL is intentionally broad and sweeping.  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181 (*Cel-Tech*).)  Based on the specific findings in this case -- that Correct Craft sold boats equipped with showers that enticed users to shower next to a running engine -- we affirm the trial court's conclusion that Correct Craft's business practices were unlawful under the UCL.

B

We turn next to the trial court's ruling that Correct Craft engaged in an unfair business practice.  The trial court appears to have combined its analysis regarding unlawful and unfair business practices and applied the risk benefit test applicable to

8

design defect cases in reaching its conclusion. Correct Craft contends the correct test is the one set out in section 5 of the Federal Trade Commission Act.

In analyzing whether there is an unfair business practice under the UCL with regard to consumers, courts apply one of three tests: (1) whether a public policy allegedly violated is tethered to a specific constitutional, statutory or regulatory provision; (2) whether the conduct was " 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' " as determined by balancing the utility of the defendant's conduct against the gravity of harm to the victim (the balancing test), or (3) the Federal Trade Commission test. (*Drum v. San Fernando Bar Assn.* (2010) 182 Cal.App.4th 247, 256-257.)

The trial court found that Boren did not prove unfairness under the first or third tests. Regarding the second test, it acknowledged that the balancing test was formulated before the decision in *Cel-Tech* and some courts have questioned its vitality. But the trial court noted the balancing test's similarity to the risk benefit test applied in design defect cases (see *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 431; CACI No. 1204) and applied the design defect risk benefit test to the evidence in this case.

We have already concluded that substantial evidence supports the trial court's finding that Correct Craft engaged in an unlawful business practice under the UCL. Thus, even if the trial court applied the wrong test in determining that Correct Craft engaged in an unfair business practice under the UCL, the disposition would be the same. Correct Craft violated the UCL.

### III

Correct Craft further contends the trial court abused its discretion in certifying the class.

Code of Civil Procedure section 382 authorizes class actions. To obtain class certification, "a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members." (*Richmond v. Dart*

9

*Industries, Inc.* (1981) 29 Cal.3d 462, 470.)  A class has a community of interest if there are common questions of law or fact, the class representative has claims typical of the class and the representative can adequately represent the class.  (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.)

Trial courts have significant discretion in granting or denying certification and we review class certification decisions only for an abuse of that discretion.  (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at 1106.)  A trial court ruling on the subject will not be disturbed on appeal unless it employed improper criteria or made erroneous legal assumptions.  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327.)

Correct Craft asserts that the class is not ascertainable because some class members may have known about the carbon monoxide risk, and some boats had short hoses that could not reach the swim platform.  It also argues Boren's claim is not typical of the class because the purchase dates would give rise to different statute of limitations defenses.

Correct Craft did not provide us with Boren's request for class certification or the order granting it.  We know that the class was certified nearly two years before trial because that fact is mentioned in the posttrial statement of decision along with the class definition.  Making matters worse, thousands of pages of trial exhibits were submitted to this court unbound and out of order in a large box.  Many of the exhibits referenced by Correct Craft in its brief appear to be missing.  We cannot consider what we cannot find.  (*Green v. City of Los Angeles* (1974) 40 Cal.App.3d 819, 835 ["An appellate court is not required to search the record to determine whether or not [it] supports the appellants' claim of error.  It is the duty of counsel to refer the reviewing court to the portions of the record which support appellants' position."].)

Based on the evidence we have been able to identify, we conclude the trial court did not employ improper criteria or make erroneous legal assumptions.  The UCL statute

10

of limitations is four years. (§ 17208.) The limitations period is equitably tolled until a reasonable plaintiff would have discovered the factual basis for the claim. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1195.) The complaint was filed in April 2007. Correct Craft cites no evidence that a reasonable consumer would have had reason to know about the risk of using the shower on the swim platform before August 30, 2007. On that date, the Coast Guard issued a carbon monoxide safety alert that said: "The Coast Guard advises owners and operators of boats not to use hand-held showers at or near the swim platform if either the gasoline-powered propulsion engine(s) and/or generator set are in use. The Coast Guard further advises that owners should never connect a hand-held shower system to the engine's raw water open cooling system. The Coast Guard is concerned about the serious health risk from [carbon monoxide] poisoning and seeks to prevent loss of life and personal injury." The trial court found that knowledge about the potential danger evolved over time and that even Correct Craft's knowledge was limited enough not to impose a legal duty to issue additional warnings before 2005. There is no evidence that boat owners understood the danger before Correct Craft. In addition, the trial court found that the shower design "would entice consumers to use the showers in circumstances contrary to the warning labels."[3]

Regarding the alleged short hoses, the only statement referencing those was a single comment at trial. A Correct Craft witness "believed there were" some short hoses when they first started installing showers, but "it wasn't a large number."

---

[3] The warning label said: "Carbon monoxide (CO) can cause brain damage or death. Engine and generator exhaust contains odorless and colorless carbon monoxide gas. Carbon monoxide will be around the back of the boat when engines or generators are running. Move to fresh air, if you feel nausea, headache, dizziness, or drowsiness."

11

On the other hand, the trial court found that each class member paid $300 for a dangerously defective product. That was sufficient evidence of economic injury to establish a well-defined community of interest.

We conclude the trial court did not abuse its discretion in certifying the class.

DISPOSITION

The judgment is affirmed.


                                                   MAURO            , J.


We concur:


          BLEASE          , Acting P. J.


          DUARTE          , J.