**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JACQUELYN MCGEE, on behalf of herself and all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>S-L SNACKS NATIONAL, in place of DIAMOND FOODS, INC.,<br>*Defendant-Appellee.* | No. 17-55577<br><br>D.C. No.<br>3:14 cv-2446-JAH<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted December 5, 2018
Pasadena, California

Filed December 4, 2020

Before: A. Wallace Tashima and Kim McLane Wardlaw, Circuit Judges, and Robert W. Pratt,[*] District Judge.

Opinion by Judge Tashima

---

[*] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

## SUMMARY[**]

### Article III Standing

The panel affirmed the district court's dismissal for lack of constitutional Article III standing of a putative class action brought by a plaintiff-consumer who alleged claims arising when Diamond Foods, Inc. included partially hydrogenated oils as an ingredient in Pop Secret popcorn.

The panel held that the plaintiff did not plausibly allege that, as a result of her purchase and consumption of Pop Secret, she suffered economic or immediate physical injury, or that she was placed at substantial risk of adverse consequences.

Concerning plaintiff's alleged economic injury, the panel held that plaintiff had not alleged that she was denied the benefit of her bargain. Although plaintiff may have assumed that Pop Secret contained only safe and healthy ingredients, her assumptions were not included in the bargain, particularly given the labeling disclosure that the product contained artificial trans fat. The panel also held that plaintiff failed to allege an economic injury based on an overpayment theory. Plaintiff did not allege that Pop Secret contained a hidden defect, or that Pop Secret was worth objectively less than what she paid for it.

Concerning plaintiff's alleged present physical injury, the panel held that plaintiff had not plausibly alleged that she

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

suffered physical injuries due to her consumption of Pop Secret.

Concerning plaintiff's alleged future physical injury, the panel held that plaintiff had not plausibly alleged that her consumption of Pop Secret substantially increased her risk of disease.

## COUNSEL

Gregory S. Weston (argued), The Weston Firm, San Diego, California, for Plaintiff-Appellant.

Andrew C. Nichols (argued) and Stephanie A. Maloney, Winston & Strawn LLP, Washington, D.C.; Amanda L. Groves, Winston & Strawn LLP, Charlotte, North Carolina; for Defendant-Appellee.

## OPINION

TASHIMA, Circuit Judge:

Plaintiff Jacquelyn McGee purchased and consumed Pop Secret brand popcorn manufactured by defendant, Diamond Foods, Inc. ("Diamond"). McGee contends that Diamond engaged in unfair practices, created a nuisance, and breached the warranty of merchantability by including partially hydrogenated oils ("PHOs") as an ingredient in Pop Secret. She further alleges that PHOs, the primary dietary source of industrially produced trans fatty acids (also known as artificial trans fat), are an unsafe food additive that causes heart disease, diabetes, cancer, and other ailments. The

district court dismissed the action for lack of constitutional standing, concluding that McGee failed sufficiently to allege injury in fact. *McGee v. Diamond Foods, Inc.*, 2017 WL 1135569, at *3 (S.D. Cal. 2017) ("*McGee II*"); *see also McGee v. Diamond Foods, Inc.*, 2016 WL 816003 (S.D. Cal. 2016) ("*McGee I*").

We hold that McGee has not plausibly alleged that, as a result of her purchase and consumption of Pop Secret, she suffered economic or immediate physical injury, or that she was placed at substantial risk of adverse health consequences. We therefore affirm.

## I.  BACKGROUND

McGee alleges that "Diamond manufactures, distributes, and sells a variety of popcorn products (collectively 'Pop Secret') containing partially hydrogenated oil ('PHO'), a food additive banned in many parts of the world because it is the only dietary source of artificial trans fat, a toxic carcinogen for which there are many safe and commercially acceptable substitutes." First Am. Compl. ¶ 1 (the "complaint"). She alleges that "PHO causes cardiovascular heart disease, diabetes, cancer, and Alzheimer's disease, and accelerates memory damage and cognitive decline," and that "[t]here is 'no safe level' of PHO or artificial trans fat intake." *Id.* ¶¶ 15–16. Her complaint cites a number of studies linking consumption of artificial trans fat to adverse health effects. *Id.* ¶¶ 10–53 & nn. 2–41.

In 2015, the U.S. Food and Drug Administration ("FDA") "made a final determination that there is no longer a consensus among qualified experts that [PHOs] . . . are generally recognized as safe (GRAS) for any use in

human food." Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34,650 (June 17, 2015). The FDA gave the food industry until June 18, 2018, to comply with its decision. *Id.* at 34,653. McGee alleges that, as a result of the FDA's determination, Diamond's inclusion of PHOs in Pop Secret was unlawful under federal and California law, Compl. ¶¶ 54–66, 78–85, allegations that Diamond disputes.[1]

McGee filed this putative class action against Diamond in 2014. The complaint alleges four causes of action: violation of the unlawful prong of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210; violation of the unfair prong of the UCL, *id.*; nuisance, Cal. Civ. Code §§ 3479–93; and breach of the implied warranty of merchantability. Compl. ¶¶ 111–44. The complaint seeks

---

[1] Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399i, any substance that is reasonably expected to become a component of food is a food additive that is subject to pre-market approval by the FDA unless it is GRAS among qualified experts. In light of the FDA's 2015 determination, McGee alleges that PHOs have never been GRAS, and hence that their inclusion in Pop Secret violated federal and California law. Compl. ¶¶ 54–66. Diamond contends that the use of PHOs was lawful until June 18, 2018, a contention with which the district court agreed. In addition, Diamond points out that, following the FDA's 2015 determination, Congress adopted legislation providing that "no food that is introduced or delivered for introduction into interstate commerce that bears or contains a [PHO] shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(I) [of the FDCA] by virtue of bearing or containing a [PHO] until the compliance date as specified in such order (June 18, 2018)." Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015). For purposes of this appeal, we need not resolve the parties' dispute about whether Diamond's use of PHOs was lawful.

restitution, disgorgement, damages, injunctive relief, and other remedies.

McGee alleges that she "purchased Pop Secret approximately once every two to three months for many years," consuming "nearly half [a] pound" of trans fat from Pop Secret since 2008. *Id.* ¶¶ 68, 92. She alleges that she was injured by Diamond's actions in three ways.

First, she alleges that "[t]he amount of trans fat she consumed in Pop Secret caused her economic injury because she believed she was purchasing a safe product when she was not." *Id.* ¶ 6. She alleges that, "[w]hen purchasing Pop Secret, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of her cardiovascular system, and products made with safe, lawful ingredients," and that she "purchased Pop Secret believing it had the qualities she sought based on the natural assumption that food sold in stores by large companies would not have unsafe and unlawful ingredients." *Id.* ¶¶ 86–87. She alleges that she "lost money as a result of Defendant's conduct because she purchased products that were detrimental to her health and were unfairly offered for sale in violation of federal and California law." *Id.* ¶ 89. She further alleges that she "suffered loss in an amount equal to the amount she paid for Pop Secret" because "Pop Secret is not fit for human consumption and has a value of $0." *Id.* ¶¶ 94, 97.

Second, McGee alleges that "[t]he amount of trans fat she consumed in Pop Secret . . . caused her physical injury by harming her heart and blood vessels and substantially aggravating her age-related cholesterol and insulin dysregulation." *Id.* ¶ 6. She alleges that she suffered

physical injury when she consumed Pop Secret "because consuming artificial trans fat in *any* quantity, including the quantity she actually consumed, inflames and damages vital organs." *Id.* ¶ 90. She further alleges that her consumption of Pop Secret "permanently degraded her cognitive abilities." *Id.* ¶ 92.

Third, McGee alleges that her consumption of Pop Secret "substantially increase[d]" her "risk of heart disease, diabetes, cancer, and death." *Id.* ¶ 90.

The district court granted Diamond's motion to dismiss the complaint for lack of Article III standing. *McGee II*, 2017 WL 1135569, at *3. The court was unpersuaded by McGee's contention that she suffered an economic injury when "she purchased a product that was less healthy than expected." *McGee I*, 2016 WL 816003, at *6. The court concluded that this theory was untenable because "the existence of [artificial trans fat] in the . . . popcorn was included in the nutritional label on the product box and Plaintiff does not allege that Defendant's popcorn labels were misleading." *Id.* Consequently, McGee's "purchases were not made on the basis of false or misleading representations."

The district court also rejected McGee's claims of present and future physical injury. *Id.* at *5–6. With respect to future injury, the court concluded that McGee's "risk of developing diseases from her consumption of [Diamond's] Trans Fat Popcorn is speculative," because "there are no facts or reasonable inferences to be drawn from the allegations in [McGee's] complaint, or in the studies cited therein, showing how the trans fat popcorn substantially increased her risk of harm, much less the probability of that harm being substantial

when she alleges her purchases occurred 'once every two or three months over three years.'" *Id.* at \*6.

Having determined that McGee failed sufficiently to allege injury in fact, and having previously afforded McGee an opportunity to amend the complaint to cure this deficiency, the district court dismissed the action with prejudice. *McGee II*, 2017 WL 1135569, at \*1, \*3. McGee timely appealed.

## II. STANDARD OF REVIEW

"We review *de novo* a district court's determination of whether a party has standing." *Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*, 956 F.3d 589, 597 (9th Cir. 2020).

## III. DISCUSSION[2]

To have Article III standing, "a '[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id.* (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "To establish an injury in fact, a plaintiff must

---

[2] Shortly before oral argument, Diamond, in a Rule 28(j) letter, conceded that McGee had standing. Despite this concession, however, because standing implicates the district court's jurisdiction, we have an independent obligation to inquire into McGee's Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (alteration in original) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997)).

show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Id.* (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548). "A particularized injury is one that affects the plaintiff in a 'personal and individual way.'" *Id.* at 598 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).[3]

McGee alleges three types of injuries—economic injury, present physical injury, and future physical injury (i.e., increased risk of disease). We address seriatim the sufficiency of these allegations below.

## A. Economic Injury

### 1. Benefit of the Bargain Theory

McGee contends that she has alleged adequately

> an economic injury because when "purchasing Pop Secret, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of her cardiovascular system, and products made with safe, lawful ingredients." In other words, Ms. McGee did not receive the benefit she thought she was

---

[3] Many claims are brought under the UCL. Private-plaintiff actions specifically require economic injury, which "renders standing under [the UCL] substantially narrower than federal standing under article III . . . ." *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 886 (Cal. 2011).

obtaining—a safe and lawful product—but rather received a dangerous and unlawful one. Thus, Plaintiff alleges benefit of the bargain injury.

We agree with McGee that, "[u]nder the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018). "The economic injury is calculated as the difference in value between what was bargained for and what was received." *Id.*

A plaintiff, however, must do more than allege that she "did not receive the benefit she *thought* she was obtaining." (Emphasis added.) The plaintiff must show that she did not receive a benefit for which she actually *bargained*. In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), for instance, the plaintiffs claimed "that the iPod's inherent risk of hearing loss . . . deprived them of the full benefit of their bargain because they cannot 'safely' listen to music." *Id.* at 961. We disagreed, holding that the plaintiffs' benefit of the bargain theory failed because

> [t]hey have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time. In fact, the plaintiffs admit that Apple provided a warning against listening to music at loud

volumes. The plaintiffs' alleged injury in fact is premised on the loss of a "safety" benefit that was not part of the bargain to begin with.

*Id.*

The same is true here. McGee does not contend that Diamond made any representations about Pop Secret's safety. Although she may have assumed that Pop Secret contained only safe and healthy ingredients, her assumptions were not included in the bargain, particularly given the labeling disclosure that the product contained artificial trans fat. Thus, even if those expectations were not met, she has not alleged that she was denied the benefit of her bargain. Absent some allegation that Diamond made false representations about Pop Secret's safety, McGee's benefit of the bargain theory falls short. *Cf. Johnson & Johnson Talcum Powder*, 903 F.3d at 298 (Fuentes, J., dissenting) ("Estrada alleges that she paid for a product based, in part, on Johnson & Johnson's representation of its safety. That representation was part of the benefit of her bargain. Because that representation was false, Estrada did *not* receive the benefit of her bargain.").

## 2. Overpayment Theory

McGee alternatively appears to contend that she suffered an economic injury because she paid more for Pop Secret than it was worth. She alleges that she "suffered loss in an amount equal to the amount she paid for Pop Secret" because

"Pop Secret is not fit for human consumption and has a value of $0."**[4]**  Compl. ¶¶ 94, 97.

Again, we agree with McGee that overpayment is a viable theory of economic injury.  We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product.  *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more for the [braking system] than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims and failed to disclose the system's limitations.  To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'"); *Maya*, 658 F.3d at 1069 ("Plaintiffs claim that, as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale.  Relatedly, they claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law.  We agree with plaintiffs that these are actual and concrete economic injuries.").

This is not, however, a case in which McGee alleges that she paid more for a product due to Diamond's deceptive conduct.  She does not allege that Diamond made false

---

**[4]** McGee asserts benefit of the bargain and overpayment theories of injury, but she does not assert a diminution in value theory of injury.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1066 (9th Cir. 2011) (distinguishing between overpayment injury, which occurs at the time of sale, and decreased value injury, which occurs after sale).  We therefore do not address it here.

representations—or actionable non-disclosures—about Pop Secret. Thus, a key element of our overpayment cases—a defendant's misrepresentations about a product—is absent here.

To the extent McGee contends that a plaintiff may rely on an overpayment theory of economic injury in a case that does not involve misrepresentations, she raises what appears to be a novel theory. Nevertheless, her theory appears to find some support. First, we arguably approved of this theory in *Birdsong*. There, the plaintiffs argued that they suffered economic harm because "the iPod has a defect (an inherent risk of hearing loss), which caused their iPods to be worth less than what they paid for them." 590 F.3d at 961. Although we rejected this argument, we did so on the narrow ground that "the plaintiffs have failed to allege a cognizable defect," *id.*, rather than treating the theory as more broadly untenable. Thus, *Birdsong* arguably may be read to suggest that, at least in the context of a hidden defect, economic injury can be established on an overpayment theory absent misrepresentations.

McGee's theory also finds some support in the Third Circuit's decision in *Johnson & Johnson Talcum Powder*. In an earlier case, *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010), the plaintiff sued a lipstick manufacturer based on the presence of trace amounts of lead in the manufacturer's products. The court held that the plaintiff had failed to establish an injury in fact, but suggested that she could have done so by alleging that the product "was worth objectively less than what one could reasonably expect." *Id.* at 259. Although *Koronthaly* was a not precedential decision, the Third Circuit adopted its reasoning in *Johnson & Johnson Talcum Powder*, 903 F.3d at 290 n.15.

To resolve this appeal, we need not decide whether, in the absence of a misrepresentation, an overpayment theory of economic injury is viable.  Even assuming that it is, McGee has failed to allege injury on that basis here.  She does not allege that Pop Secret contained a hidden defect, as alleged in *Birdsong*, or that Pop Secret was worth objectively less than what she paid for it, as hypothesized in *Koronthaly* and *Johnson & Johnson Talcum Powder*.  As McGee concedes, Pop Secret's nutritional label disclosed the presence of artificial trans fat, and the health risks of consuming artificial trans fat were firmly established by the time of McGee's purchases.   As McGee's complaint acknowledges, the "evidence of trans fat's horrific impact on the health of Americans is more than 20 years old."  Compl. ¶ 30.  Indeed, of the two dozen scientific studies cited in the  complaint, nearly two-thirds (15 out of 23) were published by 2008, when the purchases covered by the complaint began.  *Id.* ¶¶ 15–53 (citing studies and reports from 1994, 1999, 2001, 2002, 2003, 2004 (2), 2005 (2), 2006 (2), 2007 (2), 2008 (2), 2009 (3), 2010, 2011 (2), 2014, and 2015.  15 out of 23 of these studies were published in or before 2008).  Given that the health risks of consuming Pop Secret were established by 2008, we are not persuaded that the Pop Secret McGee purchased "was worth objectively less than what one could reasonably expect."  *See Johnson & Johnson Talcum Powder*, 903 F.3d at 290 n.15.**[5]**

---

**[5]** *Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018), is not to the contrary.  There, the plaintiff alleged that she purchased bread crumbs in reliance on a label falsely stating that the product contained "0gr Trans Fat per serving."  *Id.* at 767.  We concluded that the plaintiff had adequately alleged economic injury and hence, statutory standing under the UCL, because she alleged that "she relied upon the label and would not have bought the product without the misrepresentation." *Id.* at 768–69; *see also id.* at 772.  Here, in contrast, McGee does not allege that she purchased the

In sum, we conclude that McGee has not sufficiently alleged economic injury on either a benefit of the bargain theory or an overpayment theory.[6]

## B. Immediate Physical Injury

McGee alternatively contends that she has sufficiently alleged an injury in fact because she suffered a number of current physical injuries due to her consumption of Pop Secret. She alleges that Pop Secret "inflame[d] and damage[d] [her] vital organs," "permanently degraded her cognitive abilities," and "substantially aggravat[ed] her age-related cholesterol and insulin dysregulation." Compl. ¶¶ 6, 90, 92. She further alleges that "[t]here is 'no safe level' of PHO or artificial trans fat intake" and that "consuming artificial trans fat in *any* quantity" causes physical injury. *Id.* ¶¶ 16, 90.

We agree with McGee that these injuries, e.g., damage to one's vital organs and permanent degradation of one's cognitive abilities, would be sufficient to satisfy Article III standing for her non-UCL claims. We are not persuaded, however, that McGee has plausibly alleged that she suffered these injuries. She does not allege that she has undergone medical testing or examination to confirm that she suffers

---

product because of a misrepresentation by Diamond. *Kroger* is therefore distinguishable.

[6] Although we agree with Diamond that McGee has not alleged an economic injury, we do not reach Diamond's argument that "a plaintiff who consumes a food product suffers no economic injury." We leave for another day the question of whether a plaintiff who consumes a product can nonetheless be deprived of the benefit of her bargain or have overpaid for the product.

from these conditions or that they were caused by her consumption of Pop Secret. Her allegations of injury, therefore, necessarily rely on the proposition that the consumption of nearly half a pound of artificial trans fat over several years *invariably* results in such injuries.

The studies cited in her complaint do not support this inference. For example, although the complaint asserts that "consuming artificial trans fat in *any* quantity . . . inflames and damages vital organs," *Id.* ¶ 90, the studies upon which the complaint relies do not substantiate this assertion. *See* D. Mozaffarian & R. Clarke, *Quantitative Effects on Cardiovascular Risk Factors and Coronary Heart Disease Risk of Replacing Partially Hydrogenated Vegetable Oils with Other Fats and Oils*, 63 Euro. J. Clinical Nutrition S22 (2009); Esther Lopez-Garcia et al., *Consumption of Trans Fatty Acids Is Related to Plasma Biomarkers of Inflammation and Endothelial Dysfunction*, 135 J. Nutrition 562 (2005); Dariush Mozaffarian et al., *Trans Fatty Acids and Systemic Inflammation in Heart Failure*, 80 Am. J. Clinical Nutrition 1521 (2004); David J Baer et al., *Dietary Fatty Acids Affect Plasma Markers of Inflammation in Healthy Men Fed Controlled Diets: A Randomized Crossover Study*, 79 Am. J. Clinical Nutrition 969 (2004). They show a link between the consumption of trans fatty acids and systemic inflammation, but they do not assert that consumption of artificial trans fat—in the amounts alleged by McGee—invariably (or even ordinarily) inflames or damages vital organs.

Given the studies upon which McGee relies, these allegations are simply too speculative to support standing, even at the pleading stage. As the Supreme Court emphasized in *Spokeo, Inc.*, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* at 1547 (alteration in original) (quoting *Warth*, 422 U.S. at 518). McGee's allegations do not satisfy that standard.

McGee's reliance on *Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004), is misplaced. In *Covington*, the plaintiffs suffered a concrete injury: the operation of a landfill across the street from their home concretely "affect[ed] their enjoyment of their home and land" by, among other things, "caus[ing] them to suffer from watering eyes and burning noses." *Id.* at 638. Here, by contrast, McGee has not plausibly alleged that her consumption of Pop Secret either resulted in the physical injuries she asserts or diminished her quality of life.

In sum, McGee has not plausibly alleged that her consumption of Pop Secret caused her immediate physical injury.

## C. Future Physical Injury

McGee alternatively contends that she has adequately alleged an injury in fact because her consumption of Pop Secret has substantially increased her risk of disease.

Once again, McGee relies on a viable legal theory to establish standing for her non-UCL claims. "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is 'certainly impending,'" or there is a

"substantial risk that the harm will occur,"''" *Stevens v. Zappos.com, Inc. (In re Zappos.com, Inc.)*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). And we have consistently held that a credible threat of future harm is sufficient to establish an injury in fact. *See, e.g.*, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142–43 (9th Cir. 2010); *Covington*, 358 F.3d at 641; *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 948–50 (9th Cir. 2002); *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001).

McGee, however, has not plausibly alleged that her consumption of Pop Secret substantially increased her risk of disease. She alleges that "consuming artificial trans fat in *any* quantity, including the quantity she actually consumed, . . . substantially increases the risk of heart disease, diabetes, cancer, and death." Compl. ¶ 90. The studies cited in the complaint, however, do not support this contention. While McGee alleges that she consumed about 0.2 grams of artificial trans fat a day—nearly half a pound over several years—the studies she relies on associate serious health risks with greater levels of consumption. A 2006 article that the complaint cites six times, for example, describes the adverse health effects associated with consuming 2 to 7 grams of artificial trans fat per day (more than 10 times the quantity McGee consumed) and suggests that consuming less than 1 gram of artificial trans fat per day (twice McGee's consumption) "may be necessary to avoid adverse effects." Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 New Eng. J. Med. 1601, 1609 (2006). Thus, although the complaint alleges that there are serious health risks associated with the consumption of artificial trans fat, even in small quantities, we are not persuaded that McGee has plausibly alleged that her limited

consumption of Pop Secret placed her at *substantial* risk of disease.  Accordingly, McGee has not sufficiently alleged injury in fact based on her risk of future physical injury.

## IV.  CONCLUSION

We hold that McGee has not plausibly and sufficiently alleged an injury in fact.  The district court therefore properly dismissed this action for lack of Article III standing.  The judgment of the district court is

**AFFIRMED.**