NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

MAR 10 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BARRY BRAVERMAN; HAKOP
DEMIRCHYAN; JOEL GREEN; GLYNDA
ROBERSON, Dr.; EDO TSOAR; PETER
WEINSTEIN; LAWRENCE CURCIO;
ADEEL SIDDIQUI; CHARLES OLSEN;
ROBERT DESATNIK; ERIC WONDERLY;
JOHN LINGSWEILER; STEVE RIDGES;
BRANDON COSINTENO, on behalf of
themselves and all others similarly situated,

Plaintiffs-Appellants,

v.

BMW OF NORTH AMERICA, LLC, a
Delaware Limited Liability Company,

Defendant-Appellee.

No.   21-55427

D.C. No.
8:16-cv-00966-TJH-PJW

MEMORANDUM[*]

BARRY BRAVERMAN; HAKOP
DEMIRCHYAN; JOEL GREEN; GLYNDA
ROBERSON, Dr.; EDO TSOAR; PETER
WEINSTEIN; LAWRENCE CURCIO;
ADEEL SIDDIQUI; CHARLES OLSEN;
ROBERT DESATNIK; ERIC WONDERLY;
JOHN LINGSWEILER; STEVE RIDGES;
BRANDON COSINTENO, on behalf of
themselves and all others similarly situated,

No.   21-55428

D.C. No.
8:16-cv-00966-TJH-PJW

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-Appellees,

v.

BMW OF NORTH AMERICA, LLC, a
Delaware Limited Liability Company,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Jr., District Judge, Presiding

Argued and Submitted January 13, 2023
Pasadena, California

Before: WATFORD, FRIEDLAND, and BENNETT, Circuit Judges.
Concurrence by Judge BENNETT.

Individual and class plaintiffs allege that they overpaid for their BMW i3

electric cars with an optional range extending feature ("REx"), because the REx

throttles power and speed under certain driving conditions. Plaintiffs appeal the

district court's summary judgment for BMW on all claims. BMW cross-appeals

the district court's certification of a consumer class for purposes of breach of

implied warranty claims under California law. We have jurisdiction under 28

U.S.C. § 1291, and we affirm the district court's summary judgment in favor of

BMW. We dismiss the cross appeal as moot.

I

BMW i3 buyers are offered the REx as an option. The parties agree that the

REx functions as designed. The REx is a small, gasoline-powered engine that engages to recharge the car's electric battery when it runs low, thereby extending the range of the vehicle. The REx kicks in when the battery charge falls below six-and-a-half percent. When, with the REx engaged, the battery charge falls below two percent, a warning on the car's digital display alerts the driver of an upcoming reduction in drive power. The power is reduced to help avoid a "complete discharge of the high-voltage battery." At below two percent battery charge, all named plaintiffs and plaintiffs' expert experienced deceleration when (1) driving at highway speeds, (2) in extreme temperatures, or (3) when driving on steep uphill gradients.

Plaintiffs sued under the consumer protection and warranty laws of eleven states,[1] alleging that they overpaid for the i3 REx because the alleged defect creates an unreasonable safety risk, thus reducing value of the car below what they paid.[2] Individual plaintiffs testified about their own experiences with the deceleration issue, and plaintiffs' expert testified that he could recreate the issue under

---

[1] Plaintiffs brought claims under the laws of California, Colorado, Florida, Georgia, Illinois, Michigan, Ohio, Tennessee, Texas, Utah, and Washington. They also brought claims under the federal Magnuson-Moss Warranty Act, which in relevant part creates a federal cause of action for breach of certain state warranty laws. 15 U.S.C. § 2310(d)(1).

[2] No named plaintiff claimed that they had an accident or suffered personal injury or property damage as a result of the alleged defect.

controlled driving conditions. The expert offered no opinion on whether the deceleration issue rendered the design of the i3 with the REx defective.[3]

The district court certified a class of California residents pursuing breach of implied warranty claims under California law but declined to certify a class on all other claims. The court subsequently granted summary judgment to BMW on all claims, including the non-California claims.

## II

We review grants of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party. *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021). We may affirm summary judgment "on any ground supported by the record, including grounds the district court did not reach." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019).

## III

The parties agree that the existence of a design defect is an essential element of all claims. But they dispute whether plaintiffs can establish a design defect without offering expert testimony specifically opining on the existence of a defect. Plaintiffs argue that expert testimony is not required to survive summary judgment because each state whose law is at issue here permits a jury to find a design defect

---

[3] Plaintiffs claim the district court erred in finding their expert's report and testimony improperly authenticated. But any error was harmless because the district court considered the expert report and testimony in full, as do we.

where "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978). That test has come to be known as the "consumer-expectations" test and does not require (or even permit) expert testimony. *See Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994) ("[E]xpert witnesses may not be used to demonstrate what an ordinary consumer would or should expect.").[4]

Here, the consumer-expectations test cannot apply because it "is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions." *Id.*[5] "[T]he ordinary consumer of an automobile simply has no idea how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." *McCabe v. Am. Honda Motor Co., Inc.*, 100 Cal. App. 4th 1111, 1122

---

[4] Some of the states recognize an additional test to establish a design defect—the risk-benefit test. *See, e.g.*, *Barker*, 20 Cal. 3d at 432. Plaintiffs do not meaningfully engage with this test in their briefs and have therefore forfeited any reliance on it. *See Koerner v. Grigas*, 328 F.3d 1039, 1048-49 (9th Cir. 2003).

[5] We discuss California law, but plaintiffs bring claims under the laws of several other states. At oral argument, plaintiffs' counsel deferred to the briefing when asked if any other state imposes a lower evidentiary burden for plaintiffs to survive summary judgment under the consumer-expectations test. We see nothing in the briefing making this claim, so any such argument is waived.

(2002) (internal quotation marks omitted) (quoting *Soule*, 8 Cal. 4th at 567).[6]

Moreover, as plaintiffs acknowledge, the REx is a one-of-a-kind feature that does not exist in even all electric cars. Under these circumstances, an ordinary consumer could not reasonably form an opinion about the safe functioning of the REx. The consumer-expectations test is therefore unavailable to plaintiffs.[7]

Plaintiffs have offered no other applicable theory of recovery that would allow them to survive summary judgment without an expert opining as to a design defect. *Cf. Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ("[P]laintiffs have failed to allege a cognizable defect under any of their asserted claims."). As noted above, plaintiffs' expert explicitly declined (several times) to offer an opinion as to whether the i3 with the REx was defective.[8] He simply confirmed

---

[6] In limited situations, a car's design defect may be so egregious that a jury could find that the car failed to perform as safely as an ordinary consumer would expect. *See Soule*, 8 Cal. 4th at 566 n.3 ("For example, the ordinary consumers of modern automobiles may and do expect that such vehicles will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions."). This is not one of those situations.

[7] BMW argues that the consumer-expectations test is inapplicable outside the tort-law context. We decline to reach this argument, assuming, without deciding, that the consumer-expectations test could apply in this context.

[8] During his deposition, the expert testified in part:

> Q: . . . You are not actually opining that there is a defect in the i3 with the range extender, are you?

what BMW admits: when the battery drops below two percent, the car is designed to limit power and speed under certain driving conditions to extend range, and that those limitations can cause the issues both he (and certain plaintiffs) experienced. Thus, plaintiffs failed to satisfy their evidentiary burden to establish the existence of a defective design, which is fatal to all claims. The district court properly awarded summary judgment to BMW.

As we affirm the district court as to the appeal, the cross-appeal is moot.

**AFFIRMED.** The cross-appeal, No. 21-55428, is **DISMISSED** as moot.

---

A: I have not offered that opinion.

Q: And you are not going to, correct?

A: I would have to do a lot more work for that, and I haven't been asked.

Q: So as we sit here today, you are not offering any opinions that there's a design defect with the BMW i3 with a range extender, correct?

A: That is correct.



*Braverman v. BMW of North America, LLC*, Nos. 21-55427 & 21-55428

BENNETT, Circuit Judge, concurring:

I join the memorandum disposition in full.  I write separately to express my view that plaintiffs' economic damages claims are not cognizable under the consumer protection laws cited in the complaint.

Plaintiffs claim they overpaid for the i3 because the supposedly defectively designed REx lowered the i3's market value, thereby depriving them of the "benefit of the bargain."  *See, e.g.*, *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817-20 (9th Cir. 2019) (recognizing that benefit-of-the-bargain damages can be proper under California consumer protection laws).  But plaintiffs, who make no tort claim, had no accidents, and suffered no personal injuries, contend that benefit-of-the-bargain damages are available to them even though the REx functions exactly as designed and marketed.  *Cf. McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707 (9th Cir. 2020) (recognizing novelty of "an overpayment theory of economic injury in a case that does not involve misrepresentations" or personal injury).

Plaintiffs argue that they should be able to prove the existence of a defect in the REx design using the consumer-expectations or risk-benefit tests,[1] which are

---

[1] I concur in the majority's determination that plaintiffs forfeited reliance on a risk-benefit theory, but note that the grounds for my concurrence apply equally to both tort-based theories.

1

commonly applied in products liability cases to redress consumer injury. But because consumer protection laws are concerned with the bargaining process rather than product design, the mere existence of a design defect that might be actionable under tort law–were there a non-economic injury–is not sufficient to establish consumer protection liability. *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1284-89 (C.D. Cal. 2016).

Several courts have recognized the problem with extending tort-law principles to consumer protection actions seeking only economic damages. Most extensively, in *Lassen*, the district court contrasted tort law's purpose of optimizing product safety with consumer protection law's aim of ensuring fair bargaining. *Id.* It explained that:

> [T]he design defect standards developed in the products liability context do not readily map to the consumer fraud context. Whether a product is defectively designed and therefore triggers a duty to disclose for purposes of consumer fraud actions cannot be coextensive with the retrospective, open-ended design defect tests of products liability law. This is apparent when the product in issue functions as designed. While the policy objectives underlying products liability law allow for a properly-functioning product to be deemed defectively designed in retrospect and regardless of the seller's knowledge, the policies animating consumer fraud law do not.

*Id.* at 1288. Implicitly adopting this reasoning, we affirmed dismissal of a complaint seeking economic damages finding no "cognizable defect" under consumer protection laws when, as here, plaintiffs "merely suggest[ed] possible

2

changes to the [product] which they believe would make the product safer."
*Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-62 (9th Cir. 2009). And we are not
alone in acknowledging the limits of extending tort principles to actions for
economic damages. *See also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627-29
(8th Cir. 1999) (no cognizable defect in action for economic damages where car's
braking system functioned as design); *In re Bridgestone*, 288 F.3d 1012, 1017 (7th
Cir. 2002) ("If tort law fully compensates those who are physically injured, then
any recoveries by those whose products function properly mean excess
compensation."); *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 320-21 (5th Cir.
2002) (benefit-of-the-bargain damages were inappropriate where "plaintiffs'
attempt[ed] to recast their product liability claim in the language of contract law").

Consumer protection laws can reach certain types of design defect claims.
For example, when sellers willfully conceal or deliberately mislead consumers as
to a known safety risk, those sellers can be liable for consumer fraud. *See In re
Johnson & Johnson Talcum Powder Litig.*, 903 F.3d 278, 287-89 (3d Cir. 2018)
(failure to warn of known safety risk can give rise to economic damages). And
products may be so inherently dangerous that merely selling them constitutes an
actionable safety misrepresentation. *See McGee*, 982 F.3d at 707 ("[A]t least in
the context of a hidden defect, economic injury can be established on an
overpayment theory absent misrepresentations."). But the goal of *consumer*

3

*protection law* is not to optimize product safety, and not to force manufacturers to sell only the safest possible product, no matter the cost. Instead, it is to incentivize merchants to bargain in good faith, and to hold merchants accountable for their representations.

Here, plaintiffs do not claim that BMW's supposed failure to adequately disclose safety risks of the REx design is sufficient on its own to support consumer protection liability. And they concede that BMW disclosed the issue in the car's owner's manual, in dealership training materials, and to the media. Moreover, plaintiffs acknowledge that a warning light appears on the car's digital display to alert drivers that speed and power limitations may occur as the battery runs low. Indeed, during oral argument, plaintiffs' counsel suggested that BMW might be liable for simply selling the REx as designed, regardless of disclosure– notwithstanding his clients' lack of any traditional tort injury, and notwithstanding the lack of allegation that the i3 REx is unreasonably dangerous to the user. Oral Arg. at 13:20-15:30.

On this record, even in the light most favorable to plaintiffs, BMW neither deliberately concealed safety risks associated with the REx design nor willfully misled consumers about the product. Thus, even if plaintiffs can establish the existence of a design defect through use of the consumer-expectations or risk-benefit tests, such a defect is not cognizable under the state consumer protection

4

laws plaintiffs invoke.  *See McGee*, 982 F.3d at 707-08 (no cognizable injury where health risks of a product were disclosed and widely known).  Absent fraud or deception, plaintiffs received exactly what they bargained for, even if BMW could have marketed a more expensive product without the claimed flaw.[2]  *See* Restatement (Third) of Torts: Products Liability § 2 cmt. a (Am. Law Inst. 2022) ("Society does not benefit from products that are excessively safe . . . .  Society benefits most when the right, or optimal, amount of product safety is achieved.").  While *legislators* could choose to make claims for economic damages like plaintiffs' explicitly actionable under statutory consumer protection laws, *we* cannot use our power to interpret and change the common law to create that new statute.  Thus, I respectfully concur.

---

[2] Just as gasoline-powered cars can't be sold be with a fuel tank that will never run out of gas, electric cars can't (at present, at least) be sold with a battery that will never run out of a charge.  As BMW notes, the power and speed limitations imposed by the REx may be *less dangerous* than an i3 without the REx, which would have simply stopped in the middle of traffic.